UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRYAN B.,

                         Plaintiff,

                                                    5:20-CV-0767
v.                                                    (GTS/ATB)

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

                         Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     JUSTIN M. GOLDSTEIN, ESQ.
   Counsel for Plaintiff                               KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

SOCIAL SECURITY ADMINISTRATION         LOUIS JOHN GEORGE, ESQ.
OFFICE OF GENERAL COUNSEL               Special Assistant U.S. Attorney
   Counsel for Defendant
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this action filed by Bryan B. ("Plaintiff") against the Acting Commissioner of the Social Security Kilolo Kijakzi ("Defendant" or "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 14, 17.) For the reasons set forth below, Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted.

**I.**       **RELEVANT BACKGROUND**

       **A.**       **Factual Background**

Plaintiff was born in 1981, making him 35 years old at his application filing date and 37 years old at the date of the ALJ's decision. (T. 10.)[1] In his application, Plaintiff alleged that he is disabled due to chemical dependency, manic depressive psychosis bi-polar 2 disorder, surgically implanted metal plates and screws in his left heel, a deformed heel, chronic pain in both feet, insomnia, and sleep apnea. (T. 258.)

B.  **Procedural History**

On August 3, 2016, Plaintiff applied for Title II Disability Benefits. (T. 10.) Also on August 3, 2016, Plaintiff applied for Supplemental Security Income pursuant to Title XVI. (*Id.*) Both of these applications were initially denied on October 13, 2016, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Plaintiff appeared at a virtual hearing before ALJ Gretchen Mary Greisler, on September 13, 2018, and at a supplemental virtual hearing before ALJ Greisler on May 15, 2019. (T. 10, 57-106.) On May 21, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 10-20.) On May 18, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

C.  **The ALJ's Decision**

Generally, in her decision, the ALJ made the following eleven findings of fact and conclusions of law. (T. 10-19.) First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (T. 12.) Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 3, 2016, the amended alleged onset date of his disability. (T. 12.) Third, the ALJ found that Plaintiff had

---

[1] The Administrative Transcript is found at Dkt. No. 11. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

several severe impairments, including a calcaneal fracture, traumatic arthritis, bipolar disorder, and depression. (T. 12.) Fourth, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"); specifically, the ALJ considered Listings 1.06 and 12.04. (T. 13-14.) Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except he can stand up for up to 30 minutes or walk up to 5 minutes at a time before needing to sit for at least 5 minutes but retains the ability to remain on task. He can occasionally climb stairs and ramps, but cannot crouch, climb ladders, ropes or scaffolds or work at unprotected heights or in close proximity to dangerous machinery. He can perform simple, routine and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions and few, if any, workplace changes. He can perform work which does not require more than simple, short interactions with supervisors or coworkers; and does not require more than incidental contact with the public and, although the claimant may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominately involve working with objects rather than people. He requires [the] use of a cane for prolonged ambulation, walking on uneven terrain or ascending and descending slopes-retains the ability to carry small objects such as files in the free hand.

(T. 14-18.) Sixth, the ALJ found that Plaintiff was unable to perform any past relevant work. (T. 18.) Seventh, the ALJ found that Plaintiff was born on August 24, 1981, and was 34 years old making him a younger individual between the age of 18-44, on the amended alleged disability onset date. (T. 18.) Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (T. 18.) Ninth, the ALJ found that transferability of job skills is not material to Plaintiff's determination of disability because using the medical-vocational rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills. (T. 18.) Tenth, the ALJ found that Plaintiff was

able to perform other work in the national economy as an addresser, document preparer microfilming, and cutter and paster of press clippings.  (T. 18-19.)  Eleventh, the ALJ therefore concluded that Plaintiff was not disabled during the relevant time period.  (T. 20.)

### D. The Parties' Briefing on Their Motions

Generally, in his motion, Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence, because the record does not contain evidence supporting the ALJ's findings relating to (1) Plaintiff's alternating sitting and standing limitations while remaining at work, (2) Plaintiff's absence-related limitations, and (3) Plaintiff's social-interaction limitations. (Dkt. No. 14, at 14-25 [Pl.'s Mem. of Law].)  With regard to this third finding (relating to social contact with others), Plaintiff highlights the fact that "[t]he records within Exhibit 11F [created by Tioga County Department of Mental Hygiene] are missing every other page." (*Id*. at 6, 22-23)

Generally, in his motion, Defendant argues that the ALJ's RFC assessment is supported by substantial evidence, because the record does contain evidence supporting the ALJ's findings relating to (1) Plaintiff's alternating sitting and standing limitations while remaining at work, (2) Plaintiff's absence-related limitations, and (3) Plaintiff's social-interaction limitations. (Dkt. No. 17, at 4-22 [Def.'s Mem. of Law].)  With regard this third finding (relating to social contact with others), Defendant argues that Plaintiff (who was represented at his hearings) did not object to the admission of the exhibit containing the missing pages and that, in any event, Plaintiff has not been prejudiced by the error because the ALJ addressed treatment records from April 2016 through December 2017, which both predate and postdate Dr. Amanda Slowik's opinion from September 2016. (*Id*. at 16-17.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord*, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord*, *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

**III.     ANALYSIS**

Before the Court can decide whether the ALJ's RFC assessment is unsupported by substantial evidence, the Court must address Plaintiff's argument regarding a gap in the administrative record. *See Jackson v. Colvin*, 13-CV-5655, 2014 WL 4695080, at *18 (S.D.N.Y. Sept. 3, 2014) (finding that an ALJ's failure to develop the administrative record is a threshold issue, because "the Court cannot rule on whether the ALJ's decision regarding [the claimant's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record").

Plaintiff correctly points out that Exhibit 11F of the administrative record appears to be missing 15 even-numbered pages that were created by the Tioga County Department of Mental Hygiene. (T. 538-554.)  More specifically, the following pages appear missing: pages 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, and 22 of a Comprehensive Assessment; page 2 of a Discharge Summary Plan; pages 2 and 4 of a Comprehensive Assessment Update; and page 2 of a Comprehensive Assessment Update.  (*Id.*)

Generally, before an ALJ can reject a treating physician's diagnosis, he or she must attempt to fill any obvious and material gap in the administrative record. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *cf. Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

This is so even where the claimant was represented by counsel at the administrative hearing.  *See Rosa*, 168 F.3d at 79 ("[W]here there are deficiencies in the record, an ALJ is under

an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'") (citing *Perez v. Chater*, 77 F.3d 41, 47 [2d Cir. 1996]); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty . . . exists even when . . . the claimant is represented by counsel.") (citation omitted).[2]

Of course, where the missing information is immaterial or is otherwise contained in the administrative record, no such obligation exists.  *See Stacy D. v. Cmm'r of Soc. Sec.*, 358 F. Supp.3d 197, 206 (N.D.N.Y. 2019) (Baxter, M.J.) (finding that the ALJ is under no obligation to seek additional information "where the ALJ already possesses a 'complete medical history'"); *Hooper v. Colvin*, 199 F. Supp.3d 796, 814 (S.D.N.Y. 2016) ("The inquiry into the need for a treating physician's opinion hinges on the 'circumstances of the particular case, the comprehensiveness of the administrative record,' and 'whether . . . [the record,] although lacking the opinion of [the] treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ.'") (quoting *Sanchez v. Colvin*, 13-CV-6303, 2015 WL 736102, at *5-6 [S.D.N.Y. Feb. 20, 2015]).

Here, it appears that the missing records regard the following "encounter dates": March 12, 2015, September 1, 2015, October 8, 2015, and February 1, 2018.  (T. 538, 549, 551, 553.)  Plaintiff's alleged disability onset was August 3, 2016.  (T. 10.)  As a result, only the records regarding the encounter date of February 1, 2018, were created after Plaintiff's alleged disability onset date.  (*Compare* T. 538, 549, 551, 553 *with* T. 10.)  Furthermore, only one page is missing from the records regarding the encounter date of February 1, 2018.  (T. 553-54.)

---

[2] For this reason, the Court rejects Defendant's threshold argument that Plaintiff (who was represented at his hearings) did not object to the admission of the exhibit containing the missing pages.

Having said that, the Court has absolutely no idea (and the ALJ presumably had no idea) what information is contained on this missing page, even when the three-page Comprehensive Assessment Update is compared to the prior four-page Comprehensive Assessment Update (which is missing pages 2 and 4). (*Compare* T. 553-54 *with* T. 551-52.) Granted, the administrative record also contains a two-page "Progress Note" created by the Tioga County Department of Mental Hygiene that regards a "service date" of February 1, 2018. (T. 646-47.) Furthermore, both documents state that the "provider" at the Department of Mental Hygiene was "Violeta A. Teslev-Klett," LMSW. (*Compare* T. 553 *with* T. 646.) However, the Progress Note does not indicate what questions were asked, and answers were given, on the missing page of the Comprehensive Assessment Update. (*Id*.) Furthermore, it is difficult for the Court to conclude that the records regarding the encounter dates before Plaintiff's alleged disability onset date are wholly immaterial to understanding this missing page, given that the missing page is part of a "Comprehensive Assessment *Update*," suggesting that it contains or involves sort of a comparison to the prior Comprehensive Assessment and Comprehensive Assessment Update.[3]

For all of these reasons, the Court must find that the gap in the administrative record requires remand.  <u>In order to facilitate a determination supported by substantial evidence, the ALJ is instructed to supplement the record by requesting and obtaining the above-referenced missing pages.  The ALJ must then redetermine Plaintiff's claim, and issue a new decision.  The parties are respectfully advised that, should the case be returned to the Court, it will expedite its decision regarding it</u>.

**ACCORDINGLY**, it is

---

[3]     For these reasons, the Court must reject Defendant's alternative argument that Plaintiff has not been prejudiced by the error because the ALJ addressed treatment records from April 2016 through December 2017, which both predate and postdate Dr. Amanda Slowik's opinion from September 2016.

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, without a directed finding of disability, for further proceedings consistent with this Decision and Order, pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: March 31, 2022
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge